Thank you, Your Honors. May it please the Court, Stuart Gross again for Plaintiffs, Paskenta Band of Milwaukee Indians. So, the appeal concerning Umpqua turns principally on the tribe's allegations of the investigation that Umpqua undertook in May of 2014 to determine whether Enos Crosby was still authorized to transact business in the tribe's accounts, and whether that was inadequate and unreasonable. Now, the tribe was a depositor. Counsel, help me on something here. Certainly. It looks to me as though without a specific California statute, it would be pretty well arguable that the bank should have known that there was something fishy and inquired further. But there is a California statute. It looks as though either some legislators or some people who had dealings with banks were saying, the banks are jacking us around. We're depositors. We ask for our money. And instead of giving us our money, they jerk us around. And the California legislature passed a law that says it doesn't matter what's going on. When a depositor says, give me my money, they have to give them their money. And if the signature card says this is the representative of the depositor, that's it. That's the way the statute reads to me. So it looks as though even if the bank had plenty of suspicion that something was fishy, they had no choice under the law. They just had to hand out the money until there was a change of signature card. What am I missing here? So, Your Honor, if our allegations were solely about when Enos Crosby would show up at the local branch and get literal stacks of hundreds and fifty dollars, hundreds and fifties, we'd have a much tougher time in connection with those laws. However, what we're talking about is an action that Unqua took once it was concerned about authority. So it took that investigation. It engaged in that conduct with reference to the account. And whenever a bank takes actions with regards to someone's account, a deposit account, they have to take those actions with reasonable care. Now, so let me ask you, let me I understand that argument. It's sort of it's the roughly the what in torts class we'd call the gratuitous undertaking. Even if I didn't have a duty to investigate, once I did something, I had to do it reasonably. But how were you hurt by their bad investigation? If Judge Kleinfeld is right, that they had to continue to honor the the authorizations under California law in any event. So I can tell you precisely, Your Honor. On May 30th, it's alleged and it's clear and Unqua admits it, that when they got written notice from that from Tribal Council to stop Enos Crosby's access to the account, they stopped it. Well, but that's that's what the account that's what the agreement says. When the tribe tells you we've got an authorized signatory, then then you have to stop. Stop obeying the last authorization. But before that, it seems to me that as Judge Kleinfeld says, under California law, they were required to to honor the last authorizations. So the fact that they undertook an investigation and may have botched it. I'm trying to figure out what the approximate causation is here. Absolutely right. So are one of the main ways that they conducted this investigation in a negligent manner is they never contacted the tribe. No, I'm assuming for purposes of my question. I'm assuming you're right. I'm assuming they conducted a negligent. What could they could they have? Wouldn't they have still had to honor the withdrawals before 30? If they had contacted the tribe, the tribe would have sent exactly the same written notice to terminate Enos Crosby's authority. They would have said writing on. Sorry, Judge Kleinfeld. Yeah, I'm I want to give you a hypothetical that I think incorporates what you're about to say. Let's suppose the bank did start an investigation. It asked somebody to find out what's going on here with the tribe. And the investigator came back with a report saying what's happening is this Enos and Crosby's and the Losey's. They're just stealing money from the tribe. And every time you pay it out, you're paying it out to thieves who are embezzlers. And so the let's say in my hypothetical, the bank then asks its lawyer, what should we do? We don't want to give money to thieves and we know they're thieves. And the lawyer reads the California law and says, unless they give you another signature card, you have to honor the signature card. And and the resolution that says those signatures are good. And you just don't have a choice, even though you know or think, you know, that they're crooks. Wouldn't the bank still be off the hook because it was required by statute to do that? I know you're right. So if you look at even the cases that Umqua cites, when a bank has actual knowledge of a misappropriation, they cannot continue to honor those cards. OK, but under Judge Kleinfeld's hypothetical, they did. But there's no allegation here that they had actual knowledge of a mis of misdeeds. It's just that they should have suspected or because large amounts of money were being taken out. So don't you have to allege actual knowledge? So I don't. If if we were not discussing the the investigation, if we were only talking about the stacks of money, then actual knowledge. There is there's law to the point that constructive knowledge is also sufficient. And those were those were trust account cases. Understood, Your Honor. But I'm trying to get back to Judge Kleinfeld's question. And I'm afraid in my mind you're conflating two things. Let's assume they were quite negligent in their investigation. My question is, under California law, weren't they still required to honor the authorization cards in the absence of actual knowledge of mis of wrongdoing? No. So what's what's it? What case says that? OK, what case says that, Your Honor? If you go back, it's just bolus versus security. Sorry, Security Pacific National Bank. Now, it stands for the basic proposition. That's Cal 3801 proposition that a bank owes a duty of reasonable care. But that's common law. That's common law. And the California legislature has adopted a statute that says, here's what you got to do. If somebody's got an authorization card, you've got to honor it until the organization tells you it's different. So I'm still trying to find out where where it is in the absence of actual knowledge that fraud is taking place, that they're entitled not to honor the authorization card. Right. And so, Your Honor, I guess let's first back up slightly to what exactly those statutes say. Fifty one. What it says is that a bank may assume. OK, so it gives them an out. They may assume that a signatory has has authority is authorized. It all then 1450 says that a bank can ignore an adverse claim. The bank is not. I'm sorry. The tribe is not an adverse claim. Tried as a depositor. But the better way to understand what they're doing is got a common law duty of reasonable care that exists. And as Judge Klinefeld indicated, bankers got to the legislature and said, we need to carve out a piece from that reasonable care. And what the what the legislature said, OK, fine. You guys don't have a duty to monitor. Also, if someone comes to you and says some third party and says that money is mine, you can ignore that. But that's all it says. What it doesn't say is if you engage in an investigation to determine because you're concerned, it doesn't say you can ignore that. It said you must ignore that. It said notice of an adverse claim shall be disregarded. Absolutely. And what we're saying, Your Honor, is the tribe can never be an adverse claimant because the tribe is the owner of the account. Unless you have further questions, I'll reserve my very small amount of time. All right. Thank you, counsel. Mr. Curtis. Good afternoon, Your Honor. We're having trouble hearing you. Could you speak up, please? I apologize. Is this better? Yes. Casey Curtis on behalf of the bank, the Applebee's in this case. And I guess I would like to start just very, very briefly by touching upon a preservation issue with respect to what I would describe as the negligent undertaking argument. Mr. Gross is presenting, which is to say that in the trial court proceedings after the allegations about. Can't hear you. I apologize. Let's see if I can keep your voice up, please. I just wanted to start with a preservation issue with respect to the negligent undertaking argument. Mr. Gross was making, which is after the tribe had added the allegations about the May investigation, we had specifically briefed the question whether those allegations undertaken gratuitous duty. The bank did not. Oh, could give rise to a negligence claim in this case. And I would direct the court in that regard to supplemental excerpts of record 10 dash 11. And then the tribes briefing and supplemental supplemental excerpts of record 40 dash 41. And in that context, this specific issue was addressed. It is nowhere in the opening. Opening brief in arguing the negligence only discusses the generalized argument that the tribe made previously in reliance upon the dicta and Blackman versus Hale, that somehow constructive knowledge is sufficient to give rise to a duty. They only raised the negligent undertaking argument in the reply brief and in the response to our rule 28 J letter. We have not had an opportunity to brief it. I would respectfully submit that the issue has been forfeited. But in any event, to the extent that the court is inclined to consider the negligent undertaking argument, our position is unmeritorious for the reasons that were believed below on the pages that I just cited, which is specifically that in this case, we have a we have a contract that required us to continue to honor the tribe's designation of its authorized signers. And that, in addition, negligent undertaking under California law only creates a duty in a circumstance where there's. We're in the circumstance where there is one word where there's reliance by a reliance or you increase the risk of harm. Right. It's the it's the kind of the classic one hypothetical where someone is walking along the beach and they see someone drowning. They don't, in the ordinary case, have a have a duty to undertake a rescue. But if they take a rescue and thereby induce reliance or increase the risk of harm, they assume the duty. We don't have either of those things in these circumstances. And risk of harm, in your view, because had you done nothing, the result would have been the same. That is correct. So if we had not undertaken, we just would not take an undertaking, any investigation. They would have continued to have access to the account, just like they did in the end, at the end of things. And therefore, this is just not a negligent undertaking case. And again, that's assuming you reach the issue, because I want to be very clear. It was explicitly believed below and it is not in the opening brief. It comes for the first time in the reply brief. So. So I don't I just don't think that this issue is fairly before the court. In addition to that problem, I think, as the as the court has touched upon, there's still the problem of the statutes, which is we have 1450 and we have 1451 in California. And we have a very long line of California Court of Appeal case authority applying those provisions, discussing the public policies behind them, discussing how banks can be strictly liable for wrongful dishonor of checks. They have an obligation to process valid transactions initiated by authorized signers. And therefore, as a result, we would submit that there's just no circumstance here that there could be give rise to negligent undertaking any of that. So for three reasons, I want to go back to your your claim that it wasn't preserved. If I'm looking at page 22 of the opening brief and it says the well-pleaded facts give rise to the plausible inference that the investigation fell woefully short and was, you know, it was negligent. Do they have to say, and therefore we're relying on the negligent undertaking theory of the law or just isn't it enough for them to say we argued below this negligent undertaking theory? And and look. So in fairness, I think that that puts us in the position that we're in, which is we briefed it below. I would have been happy to dive into it, explain why it's inapplicable because it is inapplicable in this circumstance. Well, why why didn't that why didn't that part of the brief at least put you on notice that they were relying on a negligent investigation? Not negligent investigation, negligent undertaking, because if you read the preceding cases they cite in that thing, it is all the same bank cases that we're talking about. And it's a generalized argument based upon the dicta and Blackman versus Hale. The Chazen rejects and says it's inapplicable that somehow there's a generalized duty based upon constructive knowledge. Right. And it's important to keep in mind, that's how this case started. The first complaint, the first amended complaint had no knowledge, had nothing about this purported investigation. It was all about, well, they took large transactions out of the account. Ms. Crosby wore expensive jewelry, that there were allegations in the newspaper, and therefore we should have frozen. They only added those allegations about the investigation after they took depositions of UMCA's witnesses. In the second amended complaint, we specifically briefed that subset issue. And then in the opening brief, they revert to their generalized argument under Blackman versus Hale. I respectfully think that that's about as clear a forfeiture as you can have. But in any event, it still fails, even if you reach the issue, because, you know, assuming that they're relying upon the doctrine, they need to have reliance or an increase of the risk of harm. And you still have the competing issue of the policies underlying 1450 and 1451 still apply. And we have no California case that says somehow negligent undertaking would trump those statutes. And in that regard, I think Mr. Gross is asking this court to make new California law, which we would submit is improper, you know, under this court's hearing function. Unless there's any other specific questions about negligent, the negligence issue, I'll now turn to the aiding and abetting argument, which is to say that, you know, I think a separate and distinct line of California cases, which is Casey, Doss, et cetera, that we also explain, talk about in this circumstance, what makes aiding and abetting by a bank of sorry, what transforms the ordinary processing of transactions by a bank into aiding and abetting is actual knowledge. And I think Casey has the best formulation of that and saying knowledge is what's required. Right. And it says courts, the California courts require that that we strictly enforce actual knowledge requirement. And it's knowledge that would compel the conclusion. It is not suspicion of wrongdoing. And in that regard, you know, we've been through this in our briefing. We tried to explain that the allegations here are just not raised to that level. The closest that we get, I think it is rightly why Mr. Gross is focusing on it, is the May allegations about the investigation. But they don't suggest that we know that anyone at Umpqua knew that the tribal officials were embezzling money. They suggest at best that there's a leadership dispute. The Ms. Crosby disagrees with the faction that has purported to oust her and brings in documents. She says continue to establish her right to access the account. Umpqua undertakes an investigation and the result of the investigation is Umpqua concludes it needs to follow the provisions of California law codified in the financial code. And it needs to continue to accept the tribe designation of authorized signers pursuant to the account agreement. And ultimately concludes that until we get an adverse claim from the tribe or from someone else claiming to the funds, we need to provide access because we can be liable for a wrongful defaulter. And that's ultimately what happens. So I think for those reasons, there's no duty in this context and there's no allegations of actual knowledge and therefore the court should affirm. And I apologize for my microphone issues unless the panel has any other questions I'm happy to submit. It appears not. Rebuttal? Thank you, Your Honor. So on this question of preservation and negligent undertaking, we throughout our opening brief made clear that we were relying substantially on the negligence, the negligent manner in which Umpqua undertook that investigation. Now, the duty here that Umpqua had was not just that of a bystander. It was based on primarily the fact that it owed a duty of reasonable care. So it was not a bystander on a beach. It was the person who, under well-established California law, had a duty any time it took actions with regards to the tribe's accounts. It did take actions and it engaged in those in a negligent manner, which resulted in a loss of at least half a million dollars. I see my time has expired, but I can answer further questions if folks would like. It appears not. Thank you, counsel, for your helpful argument. The case just argued is submitted for decision by the court. Case number 17-15484 has been submitted on the brief. Case numbers 17-16633 and 17-16673 have been deferred. This completes our calendar for the day and we are adjourned. This court for this session stands adjourned.
judges: Kleinfeld, Rawlinson, Hurwitz